## August B. Spiegel, Appellee, v. John Frangoulis, Appellant.

Opinion filed September 18, 1933.

HARRY FAULKNER and HENRY B. EATON, for appellant.

WESLEY LUEDERS, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Hope Motor Company, having its place of business in Granite City, was incorporated October 1, 1928. Thirteen months later, or on October 28, 1929, appellee purchased 10 shares of its common stock for $1,000. Appellant, John Frangoulis, was then its president, and signed the stock certificate. On February 27, 1931, the circuit court of Madison county, in a proceeding

brought for the purpose, declared the corporation in-
solvent, and entered a decree for its dissolution and
winding up its affairs.

September 14, 1932, appellee brought suit against
appellant under the Illinois Securities Act, Cahill's St.
ch. 32, ¶¶ 254–296 (being secs. 96 to 137, ch. 121½,
Smith-Hurd R. S. 1931), to recover the $1,000 paid for
the stock, together with the attorney's fees provided
for by section 132 thereof. The suit was based upon
the proposition that the stock involved was of the
character defined by the act as Class "D" and that
appellant, or the corporation, had not, before selling
same, complied with the statute in the matter of filing
in the office of the secretary of state, the required docu-
ments, statements and information.

Appellant pleaded the general issue; there was a
trial before the court and a jury. At the conclusion
of appellee's case, appellant not offering any evidence,
the court directed a verdict for appellee in the sum of
$1,250, being the $1,000 expended for the stock, and
$250 which was claimed as an attorney's fee, under
the statute. From the judgment rendered on the di-
rected verdict, appellant has perfected this appeal.

The chief ground relied upon for reversal is that the
proof of appellee fails to show that the stock was
Class "D."

The statute defines four classes into which the
securities are divided, "A", "B", "C" and "D".
Section 99, Cahill's St. ch. 32, ¶ 257, designates what
securities shall be of Class "A". Section 100, Cahill's
St. ch. 32, ¶ 258, does likewise concerning those of Class
"B". Section 101, Cahill's St. ch. 32, ¶ 259, defines
and states those which shall constitute Class "C";
while section 103, Cahill's St. ch. 32, ¶ 261, provides
that all securities other than those falling within
Classes "A", "B" and "C" shall be known as secu-
rities in Class "D".

As to the evidence bearing upon the question, it appears that appellee, while testifying, was asked the question: "Who was Hope Motor Company; was it an individual or a corporation?" Answer: "It was incorporated in Illinois." Also the further question: "Generally, what was their line of business; what were they incorporated for?" To which answer was made: "To sell automobiles." No objection was made to these questions; neither was there objection to the answers, nor motion to strike. The proof further showed that the place of business was in Granite City.

This testimony, by a stockholder of the concern, who, because of his interest in same, must be considered as having some knowledge of its character and the nature of the business for which it was chartered, standing alone and undisputed, was sufficient to establish that Hope Motor Company was an Illinois corporation, engaged in the business of selling motor cars, and was in fact an ordinary mercantile concern.

A close and careful study of the many enumerations of securities, designated in sections 99 and 100, Cahill's St. ch. 32, ¶¶ 257 and 258, relating to securities belonging to Classes "A" and "B", will reveal that the common stock of the Hope Motor Company, a corporation engaged in selling motor cars, and whose stock was sold in the usual course of business to divers persons, did not possess a single element that would warrant its being considered as securities of either Class "A" or Class "B".

Section 101, Cahill's St. ch. 32, ¶ 259, provides that "those issued by a person, corporation, . . . owning a property, business or industry which has been in continuous operation not less than two years, and which has shown during a period of not less than two years prior to the filing of the statement herein pro-

vided for, average annual net profits," etc., shall be regarded as securities in Class "C".

Here the corporation was chartered October 1, 1928. The stock was sold October 28, 1929, and no required statement on file in the office of the secretary of state. The Hope Motor Company had not been "in continuous operation not less than two years"; hence, obviously, its common stock could not be a Class "C" security.

It appearing that the stock (not coming within the statutory designations of Classes "A", "B" or "C") can only be, as provided by said section 103, Cahill's St. ch. 32, ¶ 261, known as belonging to Class "D"; and as aptly stated in *Abrams v. Love,* 254 Ill. App. 428, at p. 434, "since there is nothing to show that the securities belong to either Class 'A', 'B' or 'C', there is no other place for them to lodge, except as Class 'D' securities."

We are of opinion that the evidence of appellee, undisputed, was sufficient to justify the inference that the securities in question were of Class "D".

It is contended that the court erred in admitting the secretary of state's certificate of noncompliance, for the reason, among others, that the secretary of state who certified to the facts had gone out of office at the time the case was tried. The certificate appears to be in proper form, and was signed by the official who occupied the position at the date of its execution. We do not think it necessary that the certificate be attested by the officer who happened to be the incumbent at the time the instrument was offered. We think the ruling of the court was right.

Other objections to evidence have been argued. However, in view of the record, we do not think it necessary to consider them. In our opinion there was sufficient to justify the finding that appellee had a cause of action for the $1,000 paid for the stock, and that the judgment to that extent is right.

There was a stipulation of record, to the effect that appellee had contracted with his attorney to pay him 50 per cent of any recovery he might have in the case. Appellant asserts that this agreement bars appellee's right to attorney's fees, and with this we are in accord.

Said section 132, Cahill's St. ch. 32, ¶ 290, provides that where a purchaser of securities shall prevail in a suit, such as this, the judgment shall be "for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

It seems clear to us that the attorney's fees contemplated by this section are those which the purchaser of the securities either has paid to his attorney for the service or the amount which he has become obligated to pay therefor, and does not refer to situations like the present case, where the client has not paid, nor engaged to pay, the attorney for the service rendered, but has agreed to give him therefor a portion of what he may recover, it being contingent upon his prevailing in the suit, without any personal liability of appellee. We think this portion of the judgment was wrong, and that same should be remitted.

If appellee will file in the office of the clerk, within 15 days, a remittitur in the sum of $250, the judgment will be affirmed in the sum of $1,000; otherwise reversed and remanded.

*Affirmed upon remittitur; otherwise reversed and remanded.*